UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| ZHAOXI MA,<br>　　　　　Plaintiff,<br>　v.<br><br>MICHAEL CHERTOFF, Secretary<br>of the United States Department of<br>Homeland Security; EMILIO T.<br>GONZALEZ, Director of United States<br>Citizenship and Immigration Service<br>(hereafter "CIS"); and DENIS RIORDAN,<br>Director of CIS Connecticut District<br>Office,<br>　　　　　Defendants. | NO. 3:06CV1652 (MRK) |

## MEMORANDUM OF DECISION

Currently pending before the Court is Plaintiff's Motion for Attorney's Fees and Costs under the Equal Access to Justice Act [doc. # 20]. The central issue presented is whether Plaintiff is a "prevailing party" within the meaning of the Equal Access to Justice Act, (EAJA), 28 U.S.C. § 2412(d)(1)(A). To decide that question, however, the Court must first determine whether the United States Supreme Court's decision in *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598 (2001), and its definition of "prevailing party," applies to requests for attorney's fees and costs under the EAJA. Although many courts, including several circuit courts, have addressed this question, the Second Circuit has not yet definitively ruled on it. For the reasons discussed below, the Court concludes that *Buckhannon*'s definition of "prevailing party" applies to fee requests under the EAJA and that Plaintiff is not a prevailing party as the Supreme Court has construed that term. Accordingly, the Court DENIES Plaintiff's Motion for Attorney's Fees and Costs under the Equal Access to Justice Act [doc. # 20].

**I.**

Plaintiff filed this action on October 19, 2006. *See* Complaint [doc. # 1]. In his Complaint, Plaintiff sought a declaratory judgment and mandamus to compel Defendants to adjust Plaintiff's status to that of a lawful permanent resident. The Complaint recited that on September 20, 2006, the United States Citizenship and Immigration Services ("USCIS") of the Department of Homeland Security erroneously denied his application for permanent resident status. As is the Court's practice in such cases, the Court issued an Order To Show Cause [doc. # 4], requiring Plaintiff to serve Defendants and requiring Defendants to show cause why the Court should not grant the relief requested by Plaintiff.

On December 15, 2006, Defendants filed their Response [doc. # 15] to the Court's Order to Show Cause. In their Response, Defendants reported that on December 11, 2006, USCIS had adjusted Plaintiff's status to that of a lawful permanent resident, in accordance with Plaintiff's request. In a supplemental Response [doc. # 17], Defendants further reported to the Court that Defendants had provided Plaintiff with a temporary green card, that a permanent card was forthcoming, and that Plaintiff had already filed adjustment applications for his family as derivative beneficiaries of his lawful permanent resident status.

The Court held an on-the-record telephonic conference with counsel on January 18, 2007 to discuss Defendants' representations and whether this case was moot in view of USCIS's actions. Plaintiff's counsel did not contest any of the representations of Defendants in their responses to the Court's Order To Show Cause. Accordingly, on January 31, 2007, the Court dismissed this case as moot based upon the uncontested representations of Defendants. *See* Order [doc. # 19].

Thereafter, Plaintiff timely filed a Motion for Attorney's Fees and Costs Pursuant to the EAJA [doc. # 20]. Defendants promptly opposed Plaintiff's motion. *See* Defendants' Memorandum of Law in Opposition to Plaintiff's Motion for Attorney's Fees Under the EAJA [doc. # 21].[1]

## II.

The EAJA provides as follows:

> Except as otherwise specifically provided by statute, a court shall award a *prevailing party* other than the United States fees and other expenses, in addition to any costs awarded pursuant to subsection (a), incurred by that party in any civil action (other than cases sounding in tort), including proceedings for judicial review of agency action, brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

28 U.S.C. 2412(d)(1)(A) (emphasis added). A threshold requirement for a party seeking fees under the EAJA is to establish that he is a "prevailing party." *See Vacchio v. Ashcroft*, 404 F.3d 663, 672 (2d Cir. 2005) (considering, *inter alia*, whether a habeas corpus petitioner challenging an immigration detention is a prevailing party under the EAJA); *Pres. Coal. v. Fed. Transit Admin.*, 356 F.3d 444, 450 n.2 (2d Cir. 2004) ("[T]he EAJA also requires that the claimant be a 'prevailing party' in order to recover."). Defendants argue that the definition of "prevailing party" adopted by the Supreme Court in *Buckhannon* governs fees applications under the EAJA. Plaintiff disagrees.

In *Buckhannon,* the Supreme Court considered whether the term "prevailing party" in two statutes, which allow a court to award attorneys fees and costs, included a "party that has failed to secure a judgment on the merits or a court-ordered consent decree, but has nonetheless achieved the desired result because the lawsuit brought about a voluntary change in the defendant's conduct."

---

[1] *Rodriquez v. Chertoff*, No. 3:06cv1266 (MRK) raises nearly identical issues, and the Court has considered the briefs filed in that case in connection with its consideration of the issues presented here.

3

*Buckhannon*, 532 U.S. at 600. The Supreme Court held that it does not. In the process, the Court expressly rejected the so-called "catalyst theory," under which a plaintiff could obtain attorneys fees and costs if a defendant changed its conduct in response to a lawsuit. The Court explained that the term "prevailing party" is a "legal term of art" that does not encompass a defendant's voluntary change in conduct–even if the conduct "perhaps accomplish[ed] what the plaintiff sought to achieve by the lawsuit"–because such a *voluntary* change lacks the "judicial *imprimatur*" necessary to make the plaintiff a prevailing party. *Id.* at 603-04. As the Court stated, "[w]e cannot agree that the term 'prevailing party' authorizes federal courts to award attorney's fees to a plaintiff who, by simply filing a nonfrivolous but nonetheless potentially meritless lawsuit (it will never be determined), has reached the 'sought-after-destination' without obtaining any judicial relief." *Id.* at 606. Accordingly, after *Buckhannon*, to be considered a prevailing party, a plaintiff "must not only achieve some material alteration of the legal relationship of the parties, but that change must also be judicially sanctioned." *Roberson v. Guliani*, 346 F.3d 75, 79 (2d Cir. 2003) (internal quotation marks omitted).

*Buckhannon* arose in the context of the fee-shifting provisions of the Fair Housing Amendments Act (FHAA), 42 U.S.C. § 3601 *et seq.*, and the Americans With Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq.* However, numerous courts, including the Second Circuit, have recognized that the Supreme Court's holding in *Buckhannon* extends well beyond those two provisions. *See, e.g.*, *Dattner v. Conagra Foods, Inc.*, 458 F.3d 98, 102 (2d Cir. 2006) (applying *Buckhannon* to requests for costs under Rule 54 of the *Federal Rules of Civil Procedure*); *Pres. Coal.*, 356 F.3d at 452 (applying *Buckhannon* to claims brought under the National Historic Preservation Act (NHPA), 16 U.S.C. § 470w-4); *Union of Needletrades v. Immigration & Natrualization Serv.* (*"UNITE"*), 336 F.3d 200, 205 (2d Cir. 2003) (collecting cases from other

circuits and applying *Buckhannon* to claims brought under the Freedom of Information Act (FOIA), 5 U.S.C. § 552); *J.C. v. Reg. School Dist.*, 278 F.3d 119, 123 (2d Cir. 2002) (applying *Buckhannon* to claims brought under the Individuals with Disabilities Act (IDEA), 20 U.S.C. § 1415(i)93)(B) and the Rehabilitation Act of 1973, 29 U.S.C. § 794a(b)); *N.Y. Fed'n of Taxi Drivers v. Westchester County Taxi & Limousine Comm'n*, 272 F.3d 154, 158 (2d Cir. 2001) (applying *Buckhannon* to claims brought under 42 U.S.C. § 1988).

Courts extending *Buckhannon*'s reasoning to other fee-shifting statutes have done so for a number of reasons. For one, the Supreme Court in *Buckhannon* "expressly signaled its wider application." *J.C.*, 278 F.3d at 123. The Supreme Court did so from the outset of its opinion, by observing that Congress had authorized fee-shifting for prevailing parties in numerous other statutes that used similar language and by noting that "the standards used to interpret the term 'prevailing party' under any given fee-shifting statute 'are generally applicable in all cases in which Congress has authorized an award of fees to a prevailing party.'" *Id.* at 123 (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433 n.7 (1983); *accord Buchhannon*, 532 U.S. at 603 n.4 (quoting *Hensley*); *A.R. ex rel R.V. v. N.Y. City Dep't of Educ.*, 407 F.3d 65, 75 (2d Cir. 2005) (same). The Supreme Court in *Buckhannon* cited to an appendix listing over 150 fee-shifting provisions, including the EAJA, and noted that it had "interpreted these fee-shifting provisions consistently." 532 U.S. at 602-03 & n.4 (citing *Marek v. Chesny*, 473 U.S. 1, 43-51 (1985) (appendix to opinion of Brennan, J., dissenting)). The Second Circuit has explained that it does "not suggest that *Buckhannon*'s rejection of the catalyst theory necessarily extends to each and every fee-shifting provision listed in the *Marek* appendix." *UNITE*, 336 F.3d at 207. "At the same time, however," the Second Circuit has emphasized that "our cases have acknowledged that the principles that guide our interpretation of

5

certain fee-shifting provisions inform our analysis of other such provisions that use similar language." *Id.* (collecting cases).

Furthermore, the *Buckhannon* Court explained that the term "prevailing party" is a "legal term of art" that has a well established and widely applicable meaning–one that requires an award of some relief by a court. *Buckhannon*, 563 U.S. at 603 (quoting Black's Law Dictionary); *see Thomas v. Nat'l Sci. Found.*, 330 F.3d 486, 492 (D.C.Cir. 2003) ("*Buckhannon* is, first and foremost, about the meaning of the term 'prevailing party' in civil litigation under certain fee-shifting statutes."). Indeed, in his concurrence, Justice Scalia noted that the phrase "prevailing party" was "not some newfangled legal term invented for use in late-20th century fee-shifting statutes," but "has been found within the United States Statutes at Large since at least the Bankruptcy Act of 1867." *Id.* at 611 (Scalia, J., concurring). Thus, courts have recognized that *Buckhannon* articulated a broad framework for construing and applying the term "prevailing party" in fee-shifting statutes, and that as a consequence, *Buckhannon*'s reasoning "inform[s] our analysis of other [fee-shifting] provisions that use similar language." *UNITE*, 336 F.3d at 207 (citing *Dague v. City of Burlington*, 935 F.2d 1343, 1357 (2d Cir. 1991) *rev'd in part on other grounds*, *City of Burlington v. Dague*, 505 U.S. 557 (1992) ("[T]he principles governing fee awards under [§ 1988] are applicable to the attorney's fee provisions before us because of their substantially similar language.")).

Finally, the Supreme Court in *Buckhannon* rejected a host of policy rationales advanced in support of the catalyst theory, and courts have understood the Supreme Court's disposition of those policy arguments to sweep more broadly than the two statutes at issue in that case. *See, e.g.*, *J.C.*, 278 F.3d at 124 ("This argument is simply not viable after *Buckhannon*, which considered and rejected various policy arguments in favor of the catalyst theory."). Thus, the Supreme Court

6

discounted the assertion that the catalyst theory "is necessary to prevent defendants from unilaterally mooting an action before judgment in an effort to avoid an award of attorney's fees." *Buckhannon*, 563 U.S. at 608. More importantly, the Supreme Court explained that it could not "disregard the clear legislative language" in fee-shifting statutes on the basis of policy arguments, whatever their merits. *Id.* at 610.

For these reasons, every court of appeals to have considered the issue has held that *Buckhannon*'s definition of "prevailing party" applies to fee requests under the EAJA. *See, e.g.*, *Goldstein v. Moatz*, 445 F.3d 747, 752 (4th Cir. 2006); *Marshall v. Comm'r of Soc. Sec.*, 444 F.3d 837, 840 (6th Cir. 2006); *Scherer v. United States*, 88 Fed. App'x. 316, 320 n.5 (10th Cir. 2004); *Thomas*, 330 F.3d at 492 n.1 (D.C. Cir. 2003); *Brickwood Contractors, Inc. v. United States*, 288 F.3d 1371, 1379 (Fed. Cir. 2002); *Perez-Arellano v. Smith*, 279 F.3d 791, 794 (9th Cir. 2002). Indeed, the Eleventh Circuit recently held that *Buckhannon* applied to an EAJA request for attorney's fees in the context of a lawsuit that was virtually identical to Plaintiff's case here. *Morillo-Cedron v. U.S. Citizenship & Immigration Serv.*, 452 F.3d 1254, 1257-58 (11th Cir. 2006) (reversing district court's awarding of attorney's fees and costs after the district court dismissed mandamus and declaratory judgment action as moot in response to the USCIS voluntarily granting plaintiff permanent resident status); *see also Yick Hung Sim v. U.S. Citizenship & Immigration Serv.*, No. C 04-4643 CW, 2006 WL 648726, at *2 (N.D. Cal. Mar. 9, 2006) (refusing to award attorney's fees because the USCIS "acted voluntarily").

Though a number of district courts in the Second Circuit have held that *Buckhannon* applies to requests for attorney's fees under the EAJA,[2] the Second Circuit has not yet explicitly said whether *Buckhannon*'s definition of prevailing party applies to the EAJA. However, several Second Circuit decisions suggest that the Second Circuit likely will embrace the approach of other circuits. Indeed, the Second Circuit recently considered a motion for attorney's fees under the EAJA, and in the course of its decision, the court discussed *Buckhannon* at length. *See Vacchio*, 404 F.3d at 673-74. Given the extensive discussion of the Supreme Court's decision, it certainly appears that the *Vacchio* court assumed that *Buckhannon* applied to the fee requests under the EAJA. However, it is unclear whether any party in *Vacchio* contested *Buckhannon*'s application to the EAJA and, possibly because it was uncontested, the court did not explicitly address whether *Buckhannon* applies to EAJA fee requests.

A year earlier, in *Preservation Coalition*, the Second Circuit applied *Buckhannon*'s standards to fee requests under the National Historic Preservation Act, which authorizes awards of attorney's fees to a party who "substantially prevails." *See* 16 U.S.C. § 470w-4. In the course of its discussion of the NHPA, the *Preservation Coalition* court noted that the terms "prevailing party" and "substantially prevails" are "fundamentally the same for purposes of determining whether a plaintiff can recover under a fee-shifting statute." *Pres. Coal.*, 356 F.3d at 450 n.3. Moreover, the court

---

[2] *See, e.g.*, *Choudhury v. Barnhart*, No. 04Civ.0142(RJH)(AJP), 2004 WL 2053014, at *2 (S.D.N.Y. Sept. 15, 2004) (collecting cases applying *Buckhannon* to the EAJA); *McKay v. Barnhart*, 327 F. Supp. 2d 263, 266-67 (S.D.N.Y. 2004) (applying *Buckhannon* to the EAJA); *Edwards* ex rel. *Edwards v. Barnhart*, 238 F. Supp. 2d 645, 656 (S.D.N.Y. 2003) ("District courts in this Circuit have expressly applied *Buckhannon* to the EAJA"); *Abiodun v. McElroy*, No. 01-CV-0439 (LAK), 2002 WL 31999342, at *1 (S.D.N.Y. Mar. 6, 2002) ("While [*Buckhannon*] was decided under the [FHAA and ADA], the opinion leaves no doubt at all that it governs the interpretation of the broad array of similarly worded statutes.").

equated the term "prevailing party" under the EAJA with a party who "substantially prevails" under the NHPA. *Id.* at 450 n.2.

Finally, in *UNITE*, the Second Circuit decided that *Buckhannon*'s standards applied to fee requests under FOIA. In reaching that decision, the Second Circuit expressly relied on the decisions of a number of circuits that have "taken a similarly broad view of the Court's decision" in *Buckhannon*. *UNITE*, 336 F.3d at 205. To support that statement, the Second Circuit favorably cited several circuit decisions, and provided parentheticals to its citations, including this one: "*Perez-Arellano v. Smith*, 279 F.3d 791, 794 (9th Cir. 2002) (holding that 'the Supreme Court's express rule of decision [in *Buckhannon*] sweeps . . . broadly and its reasoning is persuasively applicable to an award of attorney's fees under the [Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412(d)(1)(A)].')." *UNITE*, 336 F.3d at 205.

Having considered at length the decisions of the Second Circuit and the opinions of the many other courts that have applied *Buckhannon* to the EAJA, this Court can see no reason to interpret the term "prevailing party" under the EAJA any differently from the way in which the Supreme Court construed and applied that term in *Buckhannon*. The EAJA uses the same legal term of art that Congress used in the other statutes that the Second Circuit has held are governed by *Buckhannon*. And not only is the EAJA on the list of fee-shifting statutes referred to in *Buckhannon*, but long before that case was decided, the Supreme Court had regularly looked to case law under other fee-shifting statutes, such as 42 U.S.C.§ 1988 (to which the Second Circuit has applied *Buckhannon*), in interpreting the meaning of the term "prevailing party" under the EAJA. *See, e.g.*, *Shalala v. Schaefer*, 509 U.S. 292, 301-02 (1993) (relying on *Tex. State Teachers Assn. v. Garland Indep. School Dist.*, 489 U.S. 782 (1989) and *Hewitt v. Helms*, 482 U.S. 755 (1987)); a*ccord McGill v. Sec.*

*of Health & Human Serv.*, 712 F.2d 28 (2d Cir. 1983) (applying case law under § 1988 in interpreting the term "prevailing party" under the EAJA).

It is certainly true that the same words in different statutes may have different meanings if Congress has made that intention clear. But there is no basis in either the language or structure of the EAJA to suggest that the term "prevailing party" as used in the EAJA should bear a different meaning than the Supreme Court and the Second Circuit have given that identical term in so many other similar fee-shifting statutes, such as the FHHA, ADA, Rehabilitation Act, IDEA, NHPA, § 1988, or Rule 54.[3] *See, e.g.*, *Oil, Chem. & Atomic Workers Intern. Union v. Dept. of Energy*, 288 F.3d 452, 455 (D.C. Cir. 2002) ("We adhere to the proposition, well-established in this court and in the Supreme Court, that eligibility for an award of attorney's fees in a FOIA case should be treated the same as eligibility determinations made under other fee-shifting statutes unless there is some good reason for doing otherwise.") (cited and discussed favorably in *UNITE*, 336 F.3d at 205); *see also* H.R. Rep. No. 96-1418, at 11 (1980), *as reprinted in* 1980 U.S.C.C.A.N. 4984, 4990 (House Report on the EAJA) ("Under existing fee-shifting statutes, the definition of prevailing party has been the subject of litigation. It is the committee's intention that the interpretation of the term in [the EAJA] be consistent with the law that has developed under existing statutes.").

Recently, a district court outside the Second Circuit held that *Buckhannon* does not apply to attorney's fee requests under the EAJA. *See Kholyavskiy v. Schlecht*, No. 05C0671, 2007 WL 484595 (E.D. Wis. Feb. 9, 2007). The court reached that conclusion based on its examination of the

---

[3] As the Ninth Circuit has correctly explained, neither the use of "shall" in the EAJA nor its additional requirement that governmental action not be "substantially justified," affects in any way the meaning of the threshold requirement of "prevailing party." *See Perez-Arellano*, 279 F.3d at 794 n.4.

legislative history of the EAJA, which the court construed to reflect Congress's intent to use the term "prevailing party" in its "broad, ordinary sense, such that it encompasses the catalyst theory." *Id.* at *7. Respectfully, this Court disagrees with *Kholyavskiy*.

As the Second Circuit has explained, the legislative history of the EAJA reflects Congress's intent "to remove financial deterrents for those challenging government actions," and "to encourage challenges to improper government actions and help formulate public policy." *Vacchio*, 404 F.3d at 668. Yet, that congressional purpose–which is certainly not unique to the EAJA and could be said of many other fee-shifting statutes such as § 1988 and FOIA, to name just two–is not inconsistent with *Buckhannon*'s interpretation of the meaning of the term "prevailing party." Moreover, there is language in the EAJA's legislative history indicating that Congress intended the definition of the term "prevailing party" to be consistent with that of other fee-shifting statutes. *See* H.R. Rep. No. 96-1418, at 11. And while there certainly is some language in the legislative history of the EAJA that points in the direction that the *Kholyavskiy* court suggests, there were similar statements in the legislative history of the fee-shifting statute that the Supreme Court considered in *Buckhannon*. *See Buckhannon*, 532 U.S. at 607 (quoting the Senate Report stating that "parties may be considered to have prevailed when they vindicate rights through a consent judgment *or without formally obtaining relief*") (emphasis added). Nonetheless, the Supreme Court concluded that "[p]articularly in view of the 'American Rule' that attorney's fees will not be awarded absent 'explicit statutory authority,' such legislative history is *clearly insufficient* to alter the accepted meaning of the statutory term." *Id.* at 608 (emphasis added).

To be sure, applying *Buckhannon* to the EAJA raises the possibility that the Government could litigate vigorously with the plaintiff and then "tactically moot" the case before judgment. *See*

11

*Kholyavskiy*, 2007 WL 484595, at \*7-\*8.  But "tactical mooting"–if that is what occurred in this case–is not necessarily always contrary to a plaintiff's interests. After all, Plaintiff in this case obtained all of the relief he requested in the span of about two months, without the need to file anything other than a complaint.  From a policy point of view, one might just as well argue that government counsel should be encouraged to do the right thing from the outset of every case, without worrying about exposure to attorney's fee requests if they do so. More importantly, and in any event, the Supreme Court in *Buckhannon* "concluded that tactical mooting concerns [and other similar policy arguments] are simply insufficient to overcome the statutory requirement that a party applying for a fees and costs award must first have been accorded some relief in the district court." *Goldstein,* 445 F.3d at 752; *see Buckhannon*, 532 U.S. at 610.  Of course, if Congress wants courts to award attorney's fees and costs to parties who obtain a voluntary change in government conduct or policy, without any judicially sanctioned relief, Congress is certainly free to do so and in the wake of *Buckhannon,* knows how to do so.

### III.

Accordingly, this Court will apply *Buckhannon*'s standards and reasoning to Plaintiff's fee and costs request under the EAJA.  As should be apparent by now, Plaintiff cannot satisfy the requirements of *Buckhannon* for he did not obtain any "judicially sanctioned" relief.  *Buckhannon* and its progeny make it clear that to be considered a prevailing party, a plaintiff "must not only achieve some material alteration of the legal relationship of the parties, but that change must also be judicially sanctioned."  *Roberson*, 346 F.3d at 79 (internal quotation marks omitted).  Here, the change in the parties' legal relationship was not judicially sanctioned because the Government voluntarily gave Plaintiff precisely what he sought in his lawsuit and the Government did so without

any judicial decision, order, or award in Plaintiff's behalf. *See, e.g.*, *Morillo-Cedron*, 452 F.3d at 1257-58 (finding that the plaintiff was not a prevailing party under the EAJA where USCIS voluntarily granted plaintiff permanent resident status); *Perez-Arellano*, 279 F.3d at 795 (stating that because plaintiff obtained goal of naturalization without judicial sanction, he was not a prevailing party under the EAJA); *Beaven v. Hansen*, No. C-3-05-419, 2006 WL 1526118, at *3 (S.D.Ohio May 31, 2006) (denying fees to plaintiff who obtained change in status through voluntary action by USCIS); *Yick Hung Sim*, 2006 WL 648726, at *1-*2 (same); *Abiodun*, 2002 WL 31999342, at *1 (same).

## IV.

For these reasons, Plaintiff's Motion for Attorney's Fees and Costs under the Equal Access to Justice Act [doc. # 20] is DENIED.

IT IS SO ORDERED.

/s/     Mark R. Kravitz
United States District Judge

Dated at New Haven, Connecticut: **March 20, 2007.**

13